UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:22-cr-324-JAR-NAB-1 |
| | ) |
| ROBERT WINSTON, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM**

Defendant, Robert Winston ("Robert"), by and through counsel, files the following memorandum in support of the parties' recommended sentence of 60 months.

From one perspective, the 60-month sentence contemplated by the parties looks like a windfall for Robert. Count one of the indictment alone carries a 15-year mandatory minimum sentence and count two carries a ten-year statutory maximum. It's unclear how the guidelines would shake out if Robert were convicted on both counts, whether on pleas of guilty or following a trial. But he would face at least 15 years—an outcome three times more than the parties' recommended sentence.

From another perspective, the 60-month sentence appears substantial. The guidelines range for the offense to which Robert pled guilty comes to 27-33 months, about one-half the length of the agreed-to sentence. Moreover, the average and median sentences imposed in the last five years on those sentenced under § 2G1.1 with the same total offense level and criminal history category as Robert come to 37 and 33 months, respectively.

Whichever way one views it though, there are good reasons for the parties' agreement, which represents neither a windfall nor a stern sentence but something in between—a

1

compromise based on the facts, evidence, and uncertainties of the case. Take, for example, count one. Anna S., the named victim, made her first statement to law enforcement six months after her initial arrest and only after she was threatened with prosecution for her involvement with the minor named in count two: L.H. Only then did Anna claim Robert used force to push her into prostitution. What's more, she recanted the claim in an interview with Robert's counsel after her release from custody and subsequently sought $10,000 in exchange for her "help" at trial. Likewise, Anna engaged in prostitution long before she went to work for Robert, continued in the profession well after his arrest, and still works in the trade, which she plies in Texas where she continues to advertise on social media. Among others, these facts cast doubt on her claim about Robert's use of force to compel her to engage in prostitution, an essential element of count-one as charged.

Similarly, Anna alleged Robert kept her shuttered in a hotel room, which she could leave only with his permission. But during her time in St. Louis, Robert was mostly in Texas with no access to Anna, no visual sight of her, and no means to keep her confined. In fact, law enforcement arrested Robert in Texas on August 12, where he'd spent much of his time in May and June. In short, many of Anna's claims were debatable and her credibility as a witness was uncertain for the government and the defense alike.

Count two had similar problems. L.H. worked for Brian Epps or "Tazz," a panderer from Texas and a friend of Robert's. Brian, not Robert, brought L.H. to St. Louis, where he put her up in the same hotel as Anna. Robert met L.H. just once, shortly after she and Brian arrived. Brian and Robert then returned to Texas together. Two or so weeks later, Brian was murdered. Robert never returned to St. Louis until his re-arrest in Texas on August 12, when he came back in the custody of the United States Marshals Service. Anna and L.H. were arrested in St. Louis on June

24, 18 days earlier. Before their arrests, Robert and Anna stayed in contact by phone. Robert's phone showed no contact with L.H. and no contact with Anna about L.H. L.H. made no statement, either, and she refused to divulge any information to law enforcement.

For his part, Robert never denied his role in Anna's work. He only denied using force to compel her to engage in prostitution. But he always denied any part in L.H.'s affairs, and no objective evidence contradicts him. From the parties' perspective, these and other facts explain why Robert's plea agreement represents a reasonable compromise and why this Court should impose the parties' recommended sentence.

Respectfully submitted,

By:   /s/ ADAM FEIN

Adam Fein, MO #52255
Attorney for Defendant
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332
afein@rsfjlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Dianna Collins, Assistant United States Attorney.